UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

BRENDA SANDIFORD CROCKWELL,

                           Plaintiff,

        -against-

NEW YORK CITY,
KENNETH THOMPSON, as
DISTRICT ATTORNEY OF KINGS COUNTY
and individually,
and
THE OFFICE OF THE KINGS COUNTY
DISTRICT ATTORNEY,

                          Defendants.

_____

**CV – 16-4734**

COMPLAINT
With Jury Demand

Plaintiff by her attorney, Amoroso & Associates, PC, respectfully alleges as follows:

### PURPOSE OF ACTION

1.      Plaintiff commences this action for the purpose of seeking protection of and appropriate remedies for deprivation of, violations of rights secured by the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to2000e-17 (race, color, gender, religion, national origin), 42 U.S.C. § 1981; 42 U.S.C. 1983; 42 U.S.C. §1985, Article 1, §§ 8, 9 and 11 of the New York State Constitution, New York State Executive Law § 296 et seq.; New York State Labor Law § 201-d et seq., and New York City Human Rights Law . Equitable and other relief are also sought under 42 U.S.C. § 2000e(5)(g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981 et seq.

### JURISDICTION

2.      This Court has original subject matter jurisdiction of this action as a federal question under the United States Constitution and 42 U.S.C. §§ 1981, 1983, 1985 and Title VII

1

of the Civil Rights Law of 1964. Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981 et seq. and has jurisdiction over the common law, State and municipal law violations herein alleged pursuant to the principles of pendent jurisdiction.

3.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e (5).

## VENUE

4.    Venue lies in this District in that the Plaintiff resides within the Eastern District of New York and the Defendant's conduct took place within the boundaries of New York City and Kings County.

## CAUSES OF ACTION

5.    Plaintiff by and through her attorneys commences this action for the purpose of seeking appropriate remedies for wrongful termination and redress of violations of rights secured by United States Constitution and federal statutes, Article 1, §§ 8, 9 and 11 of the New York State Constitution, Article 15 of the New York State Executive Law, § 296 et seq.; Article 7 of New York State Labor Law, § 201-d et seq., and of the Laws of the City of New York. Equitable and other relief is also sought.

## PARTIES

6.    Plaintiff BRENDA SANDIFORD CROCKWELL ("CROCKWELL" or "Plaintiff") is a citizen of the United States and a resident of Kings County, New York. She is over twenty-one (21) years of age. Prior to her discharge from employment Plaintiff was an employee of the Defendant CITY OF NEW YORK ("CITY") and Defendant OFFICE OF THE

2

KINGS COUNTY DISTRICT ATTORNEY ("KCDA"). Plaintiff's principal place of employment was 350 Jay Street, Brooklyn, NY.

7. Defendant KCDA is a county-wide office charged with the investigation and prosecution of violation of New York State Penal Law and other laws, and was established by the New York State Constitution. Its central offices are located at 350 Jay Street, Brooklyn, NY, in the County of Kings.

8. At all times relevant to this Complaint CITY and KCDA were individual and dual employers of CROCKWELL.

9. Defendant CITY was and is a municipal corporation organized under and by virtue of the laws of the State of New York, and is a political sub-division of the same with its central office in the County of New York and numerous other offices and facilities throughout the City and State of New York. In its role as employer Defendant CITY establishes and provides the operating and capital budgets for the Defendant KCDA; sets the policy and procedures for agencies under its purview by which civil service and managerial employees are selected, tested, hired, promoted and terminated; established the city-wide Equal Employment Opportunity ("EEO") policy for its employees; and, trains all agency EEO officers. Additionally, NYC indemnifies all NYC employees, public officials and county officers, for actions undertaken in their official capacity. Pursuant to Chapter 16 § 396 of the Charter of the City of New York, all actions against the agencies or elected officers of the Defendant CITY for recovery of penalties shall be brought in the name of the CITY.

10. Defendant KENNETH G. THOMPSON, ("THOMPSON") is a duly elected public official as that term is defined by New York State law and is the District Attorney of Kings County, New York, having taken office effective January 1, 2014. As such, Defendant

3

THOMPSON is the head of Defendant KCDA. Under THOMPSON's orders and directions Defendant KCDA hires and fires its employees and establishes policies and procedures for disciplining KCDA employees, subject to collective bargaining agreements and Civil Service Law. As set forth in the New York State Constitution Defendant THOMPSON, as District Attorney, is charged with enforcing the NYS Penal and other laws. Defendant THOMPSON resides within the County of Kings. Defendant THOMPSON is sued in his official and individual capacities.

11.     When the DEFENDANTS KCDA, THOMPSON and CITY are referred to collectively herein, the term "DEFENDANTS" will be utilized.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

12.     On July 15, 2015, Plaintiff CROCKWELL, in accordance with applicable law, filed a complaint of discrimination with the EEO Commission (hereinafter "EEOC) which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended and electing that the charge be filed with all relevant local and state agencies. Subsequently, she filed a verified charge of discrimination and indicated that she elected to have the EEOC notify all state and local agencies.

13.     Plaintiff election of remedies with the federal EEOC satisfies any prerequisite filing with state and local agency with jurisdiction over the acts of discrimination alleged herein.

14.     Said complaint charged that that the DEFENDANTS engages in unlawful employment discrimination practices based upon race, color, gender, retaliation for engaging in federally protected activity, and arrest/conviction history.

4

15.     On July 5, 2016, Plaintiff received a right to sue letter from the US Department of Justice, Civil Rights Division, noting that Plaintiff had filed a charge with the US EEOC and more than 180 days had lapsed during which time the EEOC had not brought suit based on thereon against the Defendants.  See Exhibit A.

16.     Defendant CITY is an employer within the definitions contained in 42 U.S.C. §2000-E, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

17.     Defendant KCDA is an employer within the definitions contained in 42 U.S.C. §2000-E, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

## SATISFACTION OF MUNICIPAL LAW § 50 et seq. PRE-REQUISITES

18.     On May 4, 2015 a notice of claim was filed by Plaintiff CROCKWELL with the NYC Office of Comptroller as required by New York State Municipal Law § 50.

19.     Ninety-days have passed since that filing and no resolution of the matter has been made.

## FACTS

20.     CROCKWELL is, or identifies as, an African-American.

21.     CROCKWELL is, or identifies as, female.

22.     CROCKWELL is currently married, but living separate from her husband.

23.     At all times relevant herein, DEFENDANTS were aware that CROCKWELL was a member of at least two protected class.

24.     CROCKWELL was employed by DEFENDANTS from 2004 until her illegal and discriminatory discharge on October 28, 2014.

25. At the time of her initial hire in 2004, CROCKWELL was unmarried. She utilized her maiden name "Sandiford." Upon her marriage, Plaintiff assumed the use of her husband's last name, "CROCKWELL."

26. For most of the ten years that CROCKWELL was employed by Defendants KCDA and CITY, she enjoyed a successful, upwardly mobile career, being successively promoted to positions of increasing responsibility.

27. In 2007, CROCKWELL was appointed a Rackets Investigator, and worked in a variety of investigative positions.

28. In 2013, CROCKWELL was promoted to Supervising Rackets Investigator.

29. Among the responsibilities of a Supervising Rackets Investigators is the supervision of Rackets Investigators employed by the DEFENDANTS, who are assigned within the Supervising Rackets Investigator's chain of command.

30. In 2013, CROCKWELL was promoted to Command Center supervisor.

31. Among the responsibilities of the Command Center supervisor is the control of what is the nerve center of the KCDA during nights, weekends and holidays. Supervisory responsibilities include overseeing numerous subordinates including the drivers, in-field DI teams, contract building security, fire and intrusion alarms, and the monitoring all borough-wide police activities for appropriate management notifications.

32. Command Center supervisors are scheduled to work, and required to work, by KCDA policy and procedure, a schedule that includes mandatory overtime.

33. CROCKWELL was never informed or notified by her superiors or KCDA management that her work as Command Center supervisor was unacceptable or needed improvement.

34.    At the time of the adverse employment actions complained of herein, CROCKWELL was a member of the Detective Investigators Association (DIA), which is the collective bargaining representative for all individuals holding the title of Detective Investigator, Supervising Detective Investigator, Rackets Investigator, and Supervising Rackets Investigator, et al., (hereinafter collectively, "Detective Investigators" or "DIs") in all New York City District Attorney offices and the Office of the Special Narcotics Prosecutor.

35.    CROCKWELL was never informed by her union that KCDA management was filing or intended to file charges and specifications against her in her role as Command Center supervisor.

36.    CROCKWELL had the necessary qualifications to continue working as a Supervising Detective Investigator at the time of the adverse employment actions complained of herein and her work record at the KCDA demonstrated those qualifications.

37.    During her job tenure as a DI CROCKWELL never received a bad work evaluation or command discipline.

38.    During her job tenure as a DI CROCKWELL had a good work record with no history of disciplinary actions, other than a charge in 2007 for excessive lateness that was resolved by verbal discipline in accordance with KCDA policy and procedure.

39.    During her job tenure CROCKWELL was only one of a small number of African-American women holding a managerial title at the KCDA.

40.    During her job tenure CROCKWELL was only one of a small number of African-American women at the KCDA holding the title of Supervising Rackets Investigator.

7

41. At the time of the adverse employment actions complained of herein, there were no complaints about the quality or quantity of CROCKWELL's work performance, nor had Plaintiff received any poor performance evaluations.

42. DEFENDANTS had an established internal command discipline policy for DIs, which policy sets forth the procedure for disciplining DIs and appropriate penalties to be imposed by KCDA for infractions.

43. DEFENDANTS' established policy of internal command discipline was not applied as it related to CROCKWELL's termination.

44. CROCKWELL's brother was Michael Griffith; he was murdered in 1986. This case became known in the New York media as, "The Howard Beach Case."

45. Charles J. Hynes ("Hynes") was appointed by then-governor Mario Cuomo as a special prosecutor in the Howard Beach case, which resulted in the conviction of several white males for Michael Griffith's murder.

46. As a result of the Howard Beach murder prosecution the deceased's mother, Mrs. Jean Griffith Sandiford, and her immediate family including the Plaintiff, became close friends with Hynes.

47. After the success of the Howard Beach prosecution, Hynes ran for and was elected District Attorney of Kings County in 1989. Mrs. Jean Griffith Sandiford and her immediate family, including the Plaintiff, volunteered to work on his political campaign and did work on his 1989 campaign and each of Hynes' subsequent re-election campaigns, including his re-election campaign of 2013.

48. The Plaintiff volunteered to work on Hynes' 2013 re-election campaign and did, in fact, work on such campaign outside of her regular work hours.

8

49. Plaintiff's campaign work was performed off KCDA premises and without her use of KCDA equipment or other property.

50. Plaintiff's family's friendship with Hynes and her non-work hours activity on his 2013 re-election campaign was known and remarked on to her and to others, by her coworkers and managers at the KCDA.

51. At time of her employment with DEFENDANTS Plaintiff was not prohibited from engaging in political activity pursuant to Chapter 15 of Title 5 and subchapter III of Chapter 73 of Title 5 of the USCA.

52. After a highly contentious primary and general election campaign against Hynes, Defendant THOMPSON was sworn in as Kings County District Attorney on January 1, 2014.

53. On January 4, 2014, CROCKWELL was called to the office of then-Chief of Investigators, Joseph Ponzi, and informed that at the direction of Defendant THOMPSON Plaintiff was being immediately removed from her position as a Command Center supervisor. No other reason for the removal was given.

54. Plaintiff's immediate replacement at the Command Center was a male DI, Joseph Brown ("Brown"), who had worked on Defendant THOMPSON's election campaign for District Attorney.

55. Brown was also Plaintiff's DIA shop steward and as such was responsible for representing Plaintiff's interests as against any adverse employment actions taken by KCDA.

56. Thereafter, Defendant THOMPSON placed a female, Nicole Byrd ("Byrd"), in the Command Center position formerly held by Plaintiff; Byrd had worked on Defendant THOMPSON's election campaign.

57. Brown was then transferred to be part of THOMPSON's security detail and driver.

58.    Upon CROCKWELL's removal from her Command Center position, she asked what her new job assignment would be and was told by Chief Ponzi to sit at her desk and he would find out. CROCKWELL sat for several weeks at her desk waiting for a job assignment commensurate with her title and experience.

59.    Eventually, CROCKWELL was informed she was transferred to the Witness Relocation and Property/Evidence unit.

60.    At the time of CROCKWELL's transfer to the Witness Relocation and Property/Evidence Unit, the Unit's staff was supervised by a Supervising Detective Investigator, and CROCKWELL was instructed to report to same.

61.    This transfer resulted in CROCKWELL losing significant overtime hours and resulted in a significant reduction in gross pay to CROCKWELL.

62.    CROCKWELL's transfer resulted in her removal from a position of significant supervisory responsibility to one of no supervisory responsibility.

63.    CROCKWELL's transfer resulted in her being assigned to sit all day long in an unventilated, dusty, windowless room sorting through old evidence to determine which items could be discarded or returned to NYPD Property Clerk.

64.    CROCKWELL's transfer was a constructive demotion as she no longer supervised subordinates and her job duties were on the level of a clerk.

65.    THOMPSON authorized, ordered, and directed CROCKWELL's transfer and constructive demotion.

66.    At the time of her constructive demotion and transfer THOMPSON knew of Plaintiff's racial and gender status, and her familial friendship with his political opponent, Hynes.

10

67. At the time of Plaintiff's constructive demotion and transfer THOMPSON knew, was aware of or perceived that Plaintiff had exercised her constitutionally protected rights to free speech, free association, and voting franchise on behalf of his political opponent, Hynes.

68. The adverse employment action taken by DEFENDANTS against Plaintiff was not due to any misfeasance or malfeasance by her.

69. At the time of her constructive demotion and transfer CROCKWELL earned a base salary of $72,000 annually, not including the substantial overtime that she was required by DEFENDANTS to perform as a term and condition of her supervisory position.

70. At time of her constructive demotion and transfer, CROCKWELL's annual salary with mandated overtime was in excess of $100,000.

71. This ongoing and continuous violation of CROCKWELL's rights and privileges continued until DEFENDANTS' refusal to rehire her.

72. CROCKWELL, with her husband Alan Crockwell, was arrested on October 28, 2014, within the confines of Nassau County, New York State, for petit larceny, a misdemeanor crime.

73. While in police custody on October 28, 2014, Plaintiff CROCKWELL notified her supervisor of her arrest as required of her by KCDA policy and procedure.

74. While still in police custody, Plaintiff CROCKWELL met with two KCDA employees acting on behalf of DEFENDANTS.

75. During her conversation with these KCDA employees Plaintiff CROCKWELL informed them that she was not guilty of the arrest charges and that there was a video of the alleged petit larceny, which would establish this fact.

76. Plaintiff CROCKWELL observed one of the KCDA employees leave the police station after stating he was going to get a copy of this video. Plaintiff CROCKWELL then observed this KCDA employee return to the police station holding a plastic CD holder with a disc inside.

77. Plaintiff CROCKWELL was informed by one of the two KCDA employees that she was suspended from her employment pending management review of her arrest. This KCDA employee stated he was not sure if her suspension was with or without pay.

78. Plaintiff was released from police custody after receiving a desk appearance ticket ("DAT"). The DAT directed her to appear in court at a date in November to be arraigned on criminal charges.

79. Between October 28, 2014 and November 4, 2014, Plaintiff made repeated efforts to contact her DIA representatives about her suspension.

80. Between October 28, 2014 and November 4, 2014, Plaintiff spoke by telephone with Brown, her shop steward. Brown stated, in sum and substance, that he was with Defendant THOMPSON at that moment and couldn't speak freely, but he was sympathetic to her plight, as his past criminal record was at that time being reported in New York City newspapers.

81. On or about November 4, 2014, CROCKWELL received a telephone call to report to 350 Jay Street to meet with then-Chief of Investigators Joseph Bilech.

82. At that meeting Chief Bilech informed Plaintiff that her employment was terminated due to her arrest. No other reason was given for her termination.

83. Chief Bilech stated to her, "The District Attorney takes these matters very seriously."

12

84.    Plaintiff CROCKWELL met the same day with KCDA human resource personnel and was informed that her KCDA employment was terminated effective October 28, 2014.

85.    On or about November 20, 2014, Plaintiff CROCKWELL was arraigned on petit larceny charges.  Plaintiff CROCKWELL entered a 'not guilty' plea.

86.    All of Plaintiff CROCKWELL's employment benefits, including medical insurance, ceased at the direction of the DEFENDANTS effective October 28, 2014.

87.    CROCKWELL has mitigated her damages by finding subsequent employment, but such employment has been at a much lower rate than previously earned and without retirement benefits.

88.    Additionally, CROCKWELL's unlawful and discriminatory discharge ended her accrual of NYC pension system credits, her receipt of welfare fund benefits for her and her dependents, and other such benefices of city employment.

89.    CROCKWELL is aware that the DEFENDANTS have permitted KCDA employees who have been arrested for misdemeanor and felony crimes to maintain their employment status until the outcome of their criminal matters.

90.    CROCKWELL is aware that the DEFENDANTS have a policy those KCDA employees who have been arrested and/or charged with crimes to maintain their employment status pending a resolution of their criminal matters.

91.    CROCKWELL is aware that KCDA employees who have been arrested and charged with misdemeanor and/or felony crimes have been permitted to maintain their employment status pending resolution of their criminal matters.

92.    CROCKWELL is aware that DEFENDANTS have a command discipline procedure for employees holding a title of DI or Supervising DI. That command discipline procedure was not followed prior to her termination.

93.    CROCKWELL is aware that KCDA employees similarly situated to her who are not a female have been permitted to maintain their employment status after an arrest.

94.    CROCKWELL is aware that KCDA employees similarly situated to her who are not black and/or African-American have been permitted to maintain their employment status after an arrest.

95.    DEFENDANTS' termination of Plaintiff's employment was pre-textual.

96.    DEFENDANTS' termination of Plaintiff's employment was due to her gender, race, color, ethnicity, engagement in protected political activity, and/or of free speech and right to association.

97.    DEFENDANTS' disparate treatment of Plaintiff was due to her gender, race, color, engagement in protected political activity, and/or exercise of her right to free speech and right to association.

98.    On March 5, 2015, CROCKWELL pled to disorderly conduct, a violation not a crime, and not an activity implicating pecuniary or personal gain by CROCKWELL to the disadvantage of another.

99.    CROCKWELL's allocution at time of plea did not make any admissions of activities inconsistent with the requirements of performance as a Supervising Detective Investigator.

100.    Such plea is not an admission of guilt on the originally charged offense.

14

101.    CROCKWELL's disorderly conduct conviction was sealed by the trial court pursuant to NYS CPL 160.55.

102.    On April 20, 2015, CROCKWELL, through her union representative John Fleming, applied to be hired to her former position with DEFENDANTS.

103.    That request was denied orally the same day by DEFENDANTS through their high level management employee Leroy Fraser, Chief of Staff to Defendant THOMPSON.

104.    The reason given for the refusal to hire was CROCKWELL's arrest.

105.    DEFENDANTS have hired people with arrests and/or convictions for disorderly conduct.

106.    DEFENDANTS have hired people with arrests and/or convictions for misdemeanors and felonies.

107.    DEFENDANTS have hired people with histories of arrests and no criminal convictions.

108.    At the time of Plaintiff's application DEFENDANTS were hiring and recruiting people to fill DI positions.

109.    At the time of Plaintiff's application DEFENDANTS were promoting people to fill positions as Supervising Rackets Investigators.

110.    DEFENDANTS employ people with arrest and/or conviction histories.

111.    DEFENDANTS employ people with arrest and/or conviction histories who have hold the same position that CROCKWELL held at the time of her termination from KCDA employment.

112.    DEFENDANTS previously have not discharged employees merely for being arrested.

15

113.    DEFENDANTS do not discharge employees for being arrested.

114.    Adverse employment actions taken by DEFENDANTS as against Plaintiff CROCKWELL were contrary to or inconsistent with practices and/or policies previously followed by DEFENDANTS.

115.    DEFENDANTS actions taken against Plaintiff CROCKWELL were arbitrary and capricious and were motivated by animus against Plaintiff.

116.    Paragraph 3 of New York City Executive Order 151, dated August 4, 2011, directs that NYC "[a]gencies shall limit their review and consideration of an applicant's criminal convictions to (a) an individual's felony convictions in the state of New York or in any other jurisdiction; (b) an individual's unsealed misdemeanor convictions in the state of New York or in any other jurisdiction; and (c) any pending charges against the applicant. Consistent with state law, past arrests not leading to a criminal conviction shall not be considered."

117.    DEFENDANTS' consideration of Plaintiff's past arrest record that did not lead to a criminal conviction was in violation of this Mayoral Order.

118.    Article 23-A of NYS Correction Law provides that an employer may not refuse to hire, may not terminate an employee, and may not take an adverse employment action against an individual because that individual has been previously convicted of one or more criminal offenses, or because of a belief that a conviction record indicates a lack of "good moral character," unless there is a direct relationship between one or more of the previous criminal offenses and the specific employment sought or held, or employment of the individual would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

16

119. DEFENDANTS cannot show that there is a direct relationship between Plaintiff's arrest and the position of Supervising Rackets Investigator.

120. DEFENDANTS cannot show that employment of Plaintiff involves an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

121. Defendant THOMPSON campaigned against the stop and frisk policy of the New York Police Department, claiming it unfairly targets minorities and led to more young black males being arrested and put through the criminal justice system with consequent loss of employment opportunities due to unfair and unconstitutional ascription of personal tendencies to the defendants, but fired Plaintiff based on a mere arrest.

122. Defendant THOMPSON, who effected and authorized the Plaintiff's termination, campaigned against misdemeanor marihuana arrests, claiming they unfairly targeted minorities, led to more young black males being arrested and having criminal records, which in turn adversely affected their employment potential, but fired Plaintiff based on a mere arrest.

123. CROCKWELL had the necessary qualifications to continue working as a Supervising Detective Investigator at the time of her termination and her record working for the defendant KCDA demonstrates those qualifications.

124. At the time of CROCKWELL's termination from employment with DEFENDANTS KCDA and CITY, there were no complaints about the quality or quantity of her work performance, nor did she receive any poor performance evaluations.

125. There was no legitimate basis for CROCKWELL's termination.

126. DEFENDANTS knew or should have known that their actions were in violation of CROCKWELL's civil and statutory rights.

17

127. DEFENDANTS were acting under color of law when they violated CROCKWELL'S constitutional and statutory rights.

128. DEFENDANTS's adverse employment actions against CROCKWELL were part of a continuing and ongoing course of conduct and plan designed to violate her constitutional rights.

129. DEFENDANTS's adverse employment actions against CROCKWELL were part of a continuing and ongoing course of conduct and plan designed to chill other KCDA employees from exercising their constitutional rights.

130. CROCKWELL suffered the adverse employment actions of transfer, constructive demotion and termination as a result of her association with parties outside of the KCDA office.

131. CROCKWELL suffered the adverse employment actions of transfer, constructive demotion and termination as a result of her engagement in political activities.

132. CROCKWELL suffered the adverse employment actions of transfer, constructive demotion and termination as a result of her exercise of protected free speech.

133. CROCKWELL suffered the adverse employment actions of transfer, constructive demotion and termination as a result of her gender.

134. CROCKWELL suffered the adverse employment actions of transfer, constructive demotion and termination as a result of her race.

135. CROCKWELL suffered the adverse employment actions of transfer, constructive demotion and termination as a result of her color.

136. CROCKWELL suffered adverse employment actions of refusal to hire based on her arrest record.

18

137. As a result of DEFENDANTS' illegal and discriminatory conduct CROCKWELL suffered loss of employment and related benefits; future, ongoing and current financial and economic damage including but not limited to, loss of base pay and mandatory overtime pay, loss of health, vision and dental benefits, loss of pension credits, reduced future pension payments, reduced social security credits and future social security benefits.

138. As a result of DEFENDANTS' illegal and discriminatory transfer of CROCKWELL, Plaintiff suffered loss of employment and related benefits; future, ongoing and current financial and economic damage including but not limited to, loss of base pay and mandatory overtime pay, loss of health, vision and dental benefits, loss of pension credits, reduced future pension payments, reduced social security credits and future social security benefits.

139. As a result of DEFENDANTS' illegal and discriminatory constructive demotion of CROCKWELL, she suffered loss of employment and related benefits; future, ongoing and current financial and economic damage including but not limited to, loss of base pay and mandatory overtime pay, loss of health, vision and dental benefits, loss of pension credits, reduced future pension payments, reduced social security credits and future social security benefits..

140. As a result of DEFENDANTS' illegal and discriminatory termination of CROCKWELL's employment, she suffered loss of employment and related benefits; future, ongoing and current financial and economic damage including but not limited to, loss of base pay and mandatory overtime pay, loss of health, vision and dental benefits, loss of pension credits, reduced future pension payments, reduced social security credits and future social security benefits.

19

141.    As a result of DEFENDANTS' illegal and discriminatory refusal to hire CROCKWELL, she suffered loss of employment and related benefits; future, ongoing and current financial and economic damage including but not limited to, loss of base pay and mandatory overtime pay, loss of health, vision and dental benefits, loss of pension credits, reduced future pension payments, reduced social security credits and future social security benefits.

142.    As a result of DEFENDANTS' illegal and discriminatory conduct CROCKWELL has suffered from a loss of professional reputation and status, and damage to her future employment prospects.

143.    As a result of DEFENDANTS' illegal and discriminatory transfer of CROCKWELL she has suffered from a loss of professional reputation and status, and damage to her future employment prospects.

144.    As a result of DEFENDANTS' illegal and discriminatory constructive demotion of CROCKWELL has suffered from a loss of professional reputation and status, and damage to her future employment prospects.

145.    As a result of DEFENDANTS' illegal and discriminatory termination of CROCKWELL's employment, CROCKWELL has suffered from a loss of professional reputation and status, and damage to her future employment prospects.

146.    As a result of DEFENDANTS' illegal and discriminatory refusal to hire CROCKWELL she has suffered from a loss of professional reputation and status, and damage to her future employment prospects.

147.    As a result of DEFENDANTS' illegal and discriminatory conduct, CROCKWELL has suffered extreme emotional distress and psychological damage including but

not limited to, pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

148.    As a result of DEFENDANTS' illegal and discriminatory demotion of CROCKWELL, she has suffered extreme emotional distress and psychological damage including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

149.    As a result of DEFENDANTS' illegal and discriminatory transfer of CROCKWELL,  she has suffered extreme emotional distress and psychological damage including but not limited to, pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

150.    As a result of DEFENDANTS' illegal and discriminatory termination of CROCKWELL's employment, she has suffered extreme emotional distress and psychological damage including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

151.    As a result of DEFENDANTS' wrongful, careless, reckless and/or intentional refusal to hire CROCKWELL, she has suffered extreme emotional distress and psychological damage including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

**AS AND FOR A FIRST CAUSE OF ACTION**
**BASED ON DEFENDANTS' VIOLATIONS**
**OF PLAINTIFF'S RIGHTS PURSUANT TO THE FIRST AMENDMENT**
**OF THE UNITED STATES CONSTITUTION**

152.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 151 with the same force and effect as if fully set forth herein.

153.    Plaintiff is within the protection afforded by First Amendment of the US Constitution.

154.    By improperly transferring, constructively demoting, terminating the employment of, and/or refusal to rehire the Plaintiff because of her exercise of her First Amendment rights, DEFENDANTS violated Plaintiff's rights secured under the U.S. Constitution and federal law.

155.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under the First Amendment, Plaintiff suffered loss of position, constructive demotion and loss of employment, loss of professional status and reputation, related employment benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

156.    The DEFENDANTS' actions were wrongful, careless, reckless and/or intentional acts.

157.    The DEFENDANTS were governmental actors at all times alleged herein.

158.    As a result of the foregoing wrongful, careless, reckless and/or intentional actions of the DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION
## BASED ON DEFENDANTS' VIOLATIONS
## OF PLAINTIFF'S RIGHTS PURSUANT TO THE
## FOURTEENTH AMENDMENT
## OF THE UNITED STATES CONSTITUTION

159.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 158 with the same force and effect as if fully set forth herein.

160.    Plaintiff is within the protection afforded by Fourteenth Amendment of the US Constitution.

161.    By improperly transferring, constructively demoting, terminating the employment of, and/or refusal to rehire the Plaintiff, DEFENDANTS violated Plaintiff's rights secured under the U.S. Constitution and federal law.

162.    By virtue of the all the preceding paragraphs and allegations, DEFENDANTS have violated Plaintiff's federal constitutional rights.

163.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights, privileges and immunities as guaranteed under the Fourteenth Amendment, Plaintiff suffered loss of position, constructive demotion and loss of employment, loss of professional status and reputation, related employment benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

164.    The DEFENDANTS' actions were wrongful, careless, reckless and/or intentional acts.

165.    The DEFENDANTS were governmental actors at all times alleged herein.

166.    As a result of the foregoing wrongful, careless, reckless and/or intentional actions of the DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A THIRD CAUSE OF ACTION
## BASED ON DEFENDANTS' VIOLATION OF
## 42 USC § 1983 AS AGAINST INDIVIDUAL DEFENDANTS

167.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 – 166 with the same force and effect as if fully set forth herein.

23

168.    Throughout the events recited herein, the individual DEFENDANTS embarked on a course of conduct that deprived Plaintiff of her rights under the federal and New York States constitutions and federal, state and local laws.

169.    By improperly transferring, constructively demoting, terminating the employment of and/or refusing to rehire the Plaintiff, individual DEFENDANT THOMPSON violated Plaintiff's rights secured under the federal and New York State constitutions and federal, state and local laws.

170.    By virtue of all the preceding paragraphs and allegations, the individual DEFENDANTS have violated Plaintiff's civil rights.

171.    The individual DEFENDANTS' actions were willful and malicious.

172.    Individual DEFENDANT THOMPSON's actions were not undertaken in his prosecutorial capacity.

173.    The individual DEFENDANTS' were acting under color of state and local law, custom and usage, and deprived Plaintiff of her rights, privileges and immunities under the law and Constitution of the United States and the 1st and 14th Amendments to the United States Constitution, in violation of 42 USC §1983.

174.    As a result of the individual DEFENDANTS' actions and all deprivations of Plaintiff's civil rights, Plaintiff suffered loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

175. As a result of the foregoing intentional and malicious actions of the individual DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A FOURTH CAUSE OF ACTION
## BASED ON DEFENDANTS' VIOLATION OF
## 42 USC § 1981 AS AGAINST INDIVIDUAL DEFENDANTS

176. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 – 175 with the same force and effect as if fully set forth herein.

177. Throughout the events recited herein, the individual DEFENDANT THOMPSON, while acting under color of law subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the equal protection process guarantees of the 14th Amendment of the Constitution and civil rights as guaranteed under Article 1, §2 of the New York State Constitution.

178. By improperly transferring, constructively demoting, terminating the employment of and/or refusing to rehire the Plaintiff, individual DEFENDANT THOMPSON violated Plaintiff's rights secured under the federal and New York State constitutions and federal, state and local laws.

179. Plaintiff was deprived of her Constitutional rights to be free from discrimination based on her race and color.

180. DEFENDANT THOMPSON'S actions were willful and malicious.

181. As a result of DEFENDANT THOMPSON'S actions and all deprivations of Plaintiff's civil rights, Plaintiff suffered loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits,

financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

182.    As a result of the foregoing intentional and malicious acts of the individual DEFENDANT, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

**AS AND FOR A FIFTH CAUSE OF ACTION
BASED ON DEFENDANTS' VIOLATION OF
42 USC § 1981 AS AGAINST ALL DEFENDANTS**

183.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 – 182 with the same force and effect as if fully set forth herein.

184.    Throughout the events recited herein, DEFENDANTS, while acting under color of law subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the equal protection process guarantees of the 14th Amendment of the Constitution and civil rights as guaranteed under Article 1, §2 of the New York State Constitution.

185.    By improperly transferring, constructively demoting, terminating the employment of and/or refusing to rehire the Plaintiff, DEFENDANTS violated Plaintiff's rights secured under the federal and New York State constitutions and federal, state and local laws.

186.    Plaintiff was deprived of her Constitutional rights to be free from discrimination based on her race and color.

187.    DEFENDANTS' actions were willful and malicious.

26

188.    DEFENDANTS were employers of Plaintiff at the time of the discriminatory actions.

189.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's civil rights, Plaintiff suffered loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

190.    As a result of the foregoing intentional and malicious acts of the DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BASED ON DEFENDANTS' VIOLATION OF
## 42 USC § 1985 AS AGAINST ALL DEFENDANTS

191.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 –190 with the same force and effect as if fully set forth herein.

192.    DEFENDANTS conspired with and amongst each other and with others to violate Plaintiff's civil rights pursuant to 42 USC § 1985 when they agreed together to do, or cause to be done, any act in furtherance of the object of the conspiracy, whereby Plaintiff was injured in her person or property, or deprived of having and exercising any right or privilege of a citizen of the United States.

193.    Such policy and practice is an intentional and concerted effort by DEFENDANTS to discriminate against Plaintiff based on her race and//or membership in a class of people.

27

194.    By reason of the aforementioned facts and conspiracy, each DEFENDANT has violated 42 USC §1985.

195.    DEFENDANTS' actions were willful, malicious and knowing.

196.    As a result of the conspirators' actions, Plaintiff suffered loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

197.    As a result of the foregoing intentional and malicious acts of the DEFENDANTS and others conspiring with DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### BASED ON DEFENDANTS' VIOLATION OF
### 42 USC §1985 AS AGAINST THE INDIVIDUAL DEFENDANTS

198.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 – 197 with the same force and effect as if fully set forth herein.

199.    The individual DEFENDANTS conspired with and amongst each other and with others to violate Plaintiff's civil rights pursuant to 42 USC § 1985 when they agreed together to do, or cause to be done, any act in furtherance of the object of the conspiracy, whereby Plaintiff was injured in her person or property, or deprived of having and exercising any right or privilege of a citizen of the United States.

200. Such policy and practice is an intentional and concerted effort by the individual DEFENDANTS to discriminate against Plaintiff based on her race and/or membership in a class of people.

201. By reason of the aforementioned facts and conspiracy, each individual DEFENDANT has violated 42 USC §1985.

202. The individual DEFENDANTS' actions were willful, malicious and knowing.

203. As a result of the conspirators' actions, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

204. As a result of the foregoing intentional and malicious acts of the DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## BASED ON DEFENDANTS' VIOLATION OF
## TITLE VII OF CIVIL RIGHTS ACT OF 1964

205. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 – 204 with the same force and effect as if fully set forth herein.

206. Based on the aforementioned facts, DEFENDANTS discriminated against Plaintiff and treated her in a disparate manner on account of her race, color and/or national origin.

207.    DEFENDANTS intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated and harassed against in her employment, thereby subjecting Plaintiff to a hostile working environment on account of her race, color and/or national origin thereby violating §704 (A) of Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2999e-3(a).

208.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's civil rights, Plaintiff suffered,  and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

209.    As a result of the DEFENDANTS' negligent, wrongful, careless, reckless and/or intentional acts, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

**AS AND FOR A NINTH CAUSE OF ACTION**
**BASED ON HOSTILE WORK ENVIRONMENT**

210.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraph 1 – 209 with the same force and effect as if fully set forth herein.

211.    Based on the aforementioned facts, DEFENDANTS intentionally and wrongfully discriminated against Plaintiff in her employment in violation of the Constitution of the United States and applicable statutes.

212.    Plaintiff's workplace was permeated with discriminatory actions that were sufficiently severe or pervasive as to alter the conditions of Plaintiff's work environment and discourage and depress Plaintiff.

30

213.    DEFENDANTS should have known that their actions were in violation of Plaintiff's civil rights.

214.    DEFENDANTS' harassing actions were severe and pervasive so as to alter the conditions of Plaintiff's employment, causing her to be unjustly and constructively demoted and terminated.

215.    DEFENDANTS intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated and harassed in her employment, subjecting Plaintiff to a hostile working environment on account of her race, color and/or national origin thereby violating §704 (A) of Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2999e-3(a).

216.    As a result of DEFENDANTS' negligent, wrongful, careless, reckless and/or intentional acts, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

217.    As a result of the DEFENDANTS' wrongful, careless, reckless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

**AS AND FOR A TENTH CAUSE OF ACTION
BASED ON A VIOLATION OF ARTICLE 1 § 8
OF THE NEW YORK STATE CONSTITUTION**

218.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 217 with the same force and effect as if fully set forth herein.

219. Plaintiff is within the protection afforded by Article I § 8 of the New York State Constitution.

220. By improperly transferring, constructively demoting and/or terminating the employment of the Plaintiff, DEFENDANTS violated Plaintiff's rights secured under New York State Constitution, Article I § 8 to freedom of speech.

221. By virtue of the all the preceding paragraphs and allegations, DEFENDANTS have violated Plaintiff's New York State Constitutional Rights.

222. As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Constitution Article I § 8, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium

223. The DEFENDANTS' actions were wrongful, careless, reckless and/or intentional acts.

224. As a result of the foregoing wrongful, careless, reckless and/or intentional actions of the DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

**AS AND FOR A ELEVENTH CAUSE OF ACTION
BASED ON A VIOLATION OF ARTICLE 1 § 9
OF THE NEW YORK STATE CONSTITUTION**

225. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 224 with the same force and effect as if fully set forth herein.

32

226.    Plaintiff is within the protection afforded by Article I § 9 of the New York State Constitution.

227.    By improperly transferring, constructively demoting and/or terminating the employment of the Plaintiff based on her political activities and/or perceived or actual relationship with DEFENDANT THOMPSON's political opponent, DEFENDANTS violated Plaintiff's rights secured under Article I § 9.

228.    By virtue of the all the preceding paragraphs and allegations, the DEFENDANTS have violated Plaintiff's New York State Constitutional Rights.

229.    DEFENDANTS' actions were wrongful, careless, reckless and/or intentional acts.

230.    As a result DEFENDANTS' negligent, wrongful, careless, reckless and/or intentional acts, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

231.    As a result of DEFENDANTS' wrongful, careless, reckless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

**AS AND FOR A TWELFTH CAUSE OF ACTION
BASED ON A VIOLATION OF ARTICLE 1 § 11
OF THE NEW YORK STATE CONSTITUTION**

232.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 231 with the same force and effect as if fully set forth herein.

33

233.    Plaintiff is within the protection afforded by Article I § 11 of the New York State Constitution.

234.    By improperly transferring, constructively demoting and/or terminating the employment of the Plaintiff, the DEFENDANTS violated Plaintiff's rights secured under Article I § 11.

235.    By virtue of the all the preceding paragraphs and allegations, the DEFENDANTS have violated Plaintiff's New York State Constitutional Rights.

236.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Constitution Article I § 11, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

237.    DEFENDANTS' actions were wrongful, careless, reckless and/or intentional acts.

238.    As a result of the foregoing wrongful, careless and/or intentional actions of the DEFENDANTS, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**BASED ON A VIOLATION OF NEW YORK STATE LABOR LAW**
**ARTICLE 7 § 201-d, et seq.**

239.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 238 with the same force and effect as if fully set forth herein.

34

240.    Plaintiff is within the protection afforded by New York State Labor Law Article 7 § 201-d, which makes it the unlawful for an employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of an individual's political activities outside of working hours, off of the employer's premises and without use of the employer's equipment or other property.

241.    By transferring, constructively demoting and/or terminating the employment of the Plaintiff based on her legal political activities engaged in outside of working hours, DEFENDANTS violated Plaintiff's rights under New York State Labor Law Article 7 § 201-d.

242.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Labor Law Article 7 § 201-d, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

243.    DEFENDANTS' actions were wrongful, careless, reckless and/or intentional acts.

244.    As a result of the DEFENDANTS' wrongful, careless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK STATE EXECUTIVE LAW ARTICLE 15, § 296 et seq.

245.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 244 with the same force and effect as if fully set forth herein.

246.    Plaintiff is within the protection afforded by New York State Executive Law Article 15, § 296, which makes it unlawful for the employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of an individual's political activities outside of working hours, off of the employer's premises and without use of the employer's equipment or other property, if such activities are legal.

247.    By improperly transferring, constructively demoting and/or terminating the employment of the Plaintiff based on her legal political activities, DEFENDANTS violated Plaintiff's civil rights guaranteed under the New York State Constitution and New York Executive Law § 296.

248.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

249.    DEFENDANTS' actions were wrongful, careless, reckless and/or intentional.

250.    As a result of the DEFENDANTS' wrongful, careless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK STATE EXECUTIVE LAW ARTICLE 15, § 296 et seq.

251.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 250 with the same force and effect as if fully set forth herein.

252.    Plaintiff is within the protection afforded by New York State Executive Law Article 15, § 296, which makes it the unlawful  for an employer  or  employment agency to refuse to hire, employ or license, or to discharge  from  employment  or  otherwise  discriminate against  an  individual in compensation, promotion or terms, conditions or privileges of employment because of an individual's gender, race or color.

253.    By undertaking adverse employment actions against Plaintiff based on her actual or perceived gender, race and/or color, and by creating a hostile work environment, DEFENDANTS violated Plaintiff's civil rights guaranteed under the New York State Constitution and New York Executive Law § 296.

254.    Such conduct on the part of the DEFENDANTS and others, without justification or cause, violated Plaintiff's civil rights.

255.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation,

37

depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

256.    DEFENDANTS' actions were wrongful, careless, reckless and/or intentional.

257.    As a result of the DEFENDANT's wrongful, careless, reckless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW AND NEW YORK CITYADMINISTRATIVE CODE § 8-107(1) et seq.

258.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 257 with the same force and effect as if fully set forth herein.

259.    DEFENDANTS' discriminatory conduct based on Plaintiff's race, color and/or gender and subjection of Plaintiff to a hostile work environment, constitutes discrimination in violation of New York City Administrative Code ("NYCAC") § 8-107(1) et seq., and the New York City Human Rights Law ("NYCHRL").

260.    By improperly transferring, constructively demoting and/or terminating the employment of the Plaintiff based on her race, color and/or gender, DEFENDANTS violated Plaintiff's rights under NYCAC and NYCHRL.

261.    As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under NYCAC and NYCHRL, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress

38

and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

262. The forgoing was a caused by the wrongful, careless, reckless and/or intentional acts of DEFENDANTS.

263. As a result of the DEFENDANTS' wrongful, careless, reckless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW AND NEW YORK CITY ADMINISTRATIVE CODE §8-107(1) et seq.

264. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 – 263 with the same force and effect as if fully set forth herein.

265. DEFENDANTS' discriminatory conduct based on Plaintiff's mere arrest constitutes discrimination in violation of NYCAC and NYCHRL.

266. By refusing to hire, rehire and/or reinstate Plaintiff because of her arrest DEFENDANTS violated Plaintiff's rights under NYCAC and NYCHRL.

267. As a result of DEFENDANTS' actions and all deprivations of Plaintiff's rights as guaranteed under NYCAC and NYCHRL, Plaintiff suffered, and continues to suffer, loss of position, constructive demotion and loss of employment and professional status and reputation, loss of related employments benefits, financial and economic loss, extreme emotional distress and psychological damages including but not limited to pain, humiliation, depression, anxiety, insomnia and damage to her marital relationship, including but not limited to, loss of consortium.

268. The forgoing was a caused by the wrongful, careless, reckless and/or intentional acts of DEFENDANTS.

269.    As a result of DEFENDANTS' wrongful, careless, reckless and/or intentional actions, Plaintiff has been damaged in the amount of $15,000,000. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.

## JURY TRIAL

270.    Plaintiff demands a trial by jury on all issues in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff CROCKWELL prays that this Honorable Court grant the following relief:

1.    Declare the aforementioned actions of the DEFENDANTS were unconstitutional and in violation of the United States Constitution and federal law, the New York State Constitution, the New York State Executive Law, the New York State Labor Law, and the New York City Human Rights Law and Administrative Code, along with other applicable statutes;

2.    Declare that the aforementioned discriminatory and unlawful acts of the DEFENDANTS were in violation of United States Constitution and federal law 42 USC § 1981, 42 USC §1983, 42 USC §1985, Title VII of the Civil Rights Act of 1964 as amended, New York State Constitution, New York State Executive Law § 296, et seq., New York State Labor Law § 201-d, et seq. and the New York City Human Rights Law and New York City Administrative Code Sec. 8-107, et seq.;

3.    As and for the Plaintiff's First Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

4.    As and for the Plaintiff's Second Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

5.      As and for the Plaintiff's Third Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

6.      As and for the Plaintiff's Fourth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

7.      As and for the Plaintiff's Fifth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

8.      As and for the Plaintiff's Sixth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

9.      As and for the Plaintiff's Seventh Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

10.     As and for the Plaintiff's Eighth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

11.     As and for the Plaintiff's Ninth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

12.     As and for the Plaintiff's Tenth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

13.     As and for the Plaintiff's Eleventh Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

14.     As and for the Plaintiff's Twelfth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

15.     As and for the Plaintiff's Thirteenth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

16.    As and for the Plaintiff's Fourteenth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

17.    As and for the Plaintiff's Fifteenth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

18.    As and for the Plaintiff's Sixteenth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

19.    As and for the Plaintiff's Seventeenth Cause of Action, grant the Plaintiff the sum of $15,000,000 in compensatory and $5,000,000 in exemplary damages;

20.    Grant the Plaintiff all costs for this action, including reasonable attorneys' fees; as permitted; and,

21.    Grant Plaintiff such other and further relief as this Court may deem just and proper.

Date: August 24, 2016
     New York, NY

                          Yours, etc.,

                          **AMOROSO & ASSOCIATES, PC**
                          Attorneys for the Plaintiff

                          BY: _____
                          **DINO G. AMOROSO**
                          43 West 43rd Street, Suite 64
                          New York, NY 10036-7424
                          (Office) 212-709-8031
                          (Fax) 212-943-2300

EXHIBIT A



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7010 0290 0000 2017 5280

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

July 05, 2016

Ms. Brenda Crockwell
c/o Dianne E. Malone, Esquire
Law Offices of Amoroso & Assocs.
43 West 43rd Street
Suite 64
New York, NY  10036-7424

Re: EEOC Charge Against Kings County District Attorney's Office , et al.
    No. 520201503236

Dear Ms. Crockwell:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
    Kings County District Attorney's Office